Authentisign ID: ECD35D84-769D-4D0A-8AB8-C4BEE2AF10BC

# PURCHASE AND SALE AGREEMENT

1. **Purchase and Sale.** For and in consideration of the mutual covenants herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned buyer
_____ **Lorie D. Bane** _____ ("Buyer") agrees to buy and the
undersigned seller _____ **Trustee** _____ ("Seller")
agrees to sell all that tract or parcel of land, with such improvements as are located thereon, described as follows:
All that tract of land known as: ___ **1463 River Run Circle** _____
(Address) _____ **Sevierville** _____ (City), Tennessee, ____ **37876** ___ (Zip), as recorded in
_____ County Register of Deeds Office, ___ **2127** ___ deed book(s), ___ **147** ___ page(s),
and/or _____ instrument number and as further described as:
___ **Tax ID: 016k B 031.00** ___ **/ Lot 31 of River Run Estates** _____ together with all
fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Property."

   A. **INCLUDED** as part of the Property (if present): all attached light fixtures and bulbs including ceiling fans; permanently attached plate glass mirrors; heating, cooling, and plumbing fixtures and equipment; all doors, storm doors and windows; all window treatments (e.g., shutters, blinds, shades, curtains, draperies) and hardware; all wall-to-wall carpet; range; all built-in kitchen appliances; all bathroom fixtures and bathroom mirrors; all gas logs, fireplace doors and attached screens; all security system components and controls; garage door opener and all (at least ____) remote controls; an entry key; swimming pool and its equipment; awnings; permanently installed outdoor cooking grills; all landscaping and all outdoor lighting; mailbox(es); attached basketball goals and backboards; TV mounting brackets (but excluding flat screen TVs); antennae and satellite dishes (excluding components); and central vacuum systems and attachments.

   B. Other items that **REMAIN** with the Property at no additional cost to Buyer:

   C. Items that **WILL NOT REMAIN** with the Property:

   D. **LEASED ITEMS:** Leased items that remain with the Property: (e.g., security systems, water softener systems, fuel tank, etc.):
   Buyer shall assume any and all lease payments as of Closing. If leases are not assumable, the balance shall be paid in full by Seller at or before Closing.
   ☐ Buyer does not wish to assume a leased item. **(THIS BOX MUST BE CHECKED IN ORDER FOR IT TO BE A PART OF THIS AGREEMENT.)**
   Buyer does not wish to assume Seller's current lease of _____;
   therefore, Seller shall have said lease cancelled and leased items removed from Property prior to Closing.

   E. **FUEL:** Fuel, if any, will be adjusted and charged to Buyer and credited to Seller at Closing at current market prices.

2. **Purchase Price, Method of Payment and Closing Expenses.** Buyer warrants that, except as may be otherwise provided herein, Buyer will at Closing have sufficient cash to complete the purchase of the Property under the terms of this Purchase and Sale Agreement (hereinafter "Agreement"). The purchase price to be paid is: $ ___ **245,000.00** ___, _____ **Two Hundred Forty-Five Thousand** _____ U.S. Dollars, ("Purchase Price") which shall be disbursed to Seller or Seller's Closing Agency by one of the following methods:
   i. a Federal Reserve Bank wire transfer;
   ii. a Cashier's Check issued by a financial institution as defined in 12 CFR § 229.2(i); OR
   iii. other such form as is approved in writing by Seller.

   A. **Financial Contingency – Loan(s) To Be Obtained.** This Agreement is conditioned upon Buyer's ability to obtain a loan(s) in the principal amount up to _____% of the Purchase Price listed above to be secured by a deed of trust on the Property. "Ability to obtain" as used herein means that Buyer is qualified to receive the loan described

This form is copyrighted and may only be used in real estate transactions in which _____ **Christopher Bane** _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

Authentisign ID: ECD35D64-765D-4D0A-BAB6-C4BEE2AF10BC

49 herein based upon Lender's customary and standard underwriting criteria. In consideration of Buyer, having acted
50 in good faith and in accordance with the terms below, being unable to obtain financing by the Closing Date, the
51 sufficiency of such consideration being hereby acknowledged, Buyer may terminate this Agreement by providing
52 written notice via the Notification form or equivalent written notice. Seller shall have the right to request any
53 supporting documentation regarding loan denial. Upon termination, Buyer is entitled to a refund of the Earnest
54 Money/Trust Money. Lender is defined herein as the financial institution funding the loan.
55 The loan shall be of the type selected below (**Select the appropriate boxes. Unselected items will not be part of**
56 **this Agreement):**
57  □  Conventional Loan      ☒  FHA Loan; attach addendum
58  □  VA Loan; attach addendum   □  Other _____
59 Buyer may apply for a loan with different terms and conditions and also Close the transaction provided all other
60 terms and conditions of this Agreement are fulfilled, and the new loan does not increase any costs charged to Seller.
61 Buyer shall be obligated to Close this transaction if Buyer has the ability to obtain a loan with terms as described
62 herein and/or any other loan for which Buyer has applied and been approved.
63 **Loan Obligations:** *The Buyer agrees and/or certifies as follows:*
64   (1) Within three (3) days after the Binding Agreement Date, Buyer shall make application for the loan and
65     shall pay for credit report. Buyer shall immediately notify Seller or Seller's representative of having
66     applied for the loan and provide Lender's name and contact information, and that Buyer has instructed
67     Lender to order credit report. Such certifications shall be made via the Notification form or equivalent
68     written notice;
69   (2) Within fourteen (14) days after the Binding Agreement Date, Buyer shall warrant and represent to Seller
70     via the Notification form or equivalent written notice that:
71      a.  Buyer has secured evidence of hazard insurance which will be effective at Closing and Buyer shall
72       notify Seller of the name of the hazard insurance company;
73      b.  Buyer has notified Lender of an Intent to Proceed and has available funds to Close per the signed
74       Loan Estimate; and
75      c.  Buyer has requested that the appraisal be ordered and affirms that the appraisal fee has been paid.
76   (3) Buyer shall pursue qualification for and approval of the loan diligently and in good faith;
77   (4) Buyer shall continually and immediately provide requested documentation to Lender and/or loan
78     originator;
79   (5) Unless otherwise stated in this Agreement, Buyer represents that this loan is not contingent upon the lease
80     or sale of any other real property and the same shall not be used as the basis for loan denial; and
81   (6) Buyer shall not intentionally make any material changes in Buyer's financial condition which would
82     adversely affect Buyer's ability to obtain the Primary Loan or any other loan referenced herein.
83 Should Buyer fail to timely comply with section 2.A.(1) and/or 2.A.(2) above and provide notice as required, Seller
84 may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not
85 furnish Seller the requested documentation within two (2) days after such demand for compliance, Buyer shall be
86 considered in default and Seller's obligation to sell is terminated.
87 □ **B.**  **Financing Contingency Waived (THIS BOX MUST BE CHECKED TO BE PART OF THIS AGREEMENT.)**
88   (e.g. "All Cash", etc.): Buyer's obligation to close shall not be subject to any financial contingency. Buyer reserves
89   the right to obtain a loan. Buyer will furnish proof of available funds to close in the following manner:
90   _____ (e.g. bank statement, Lender's commitment letter) within five (5)
91   days after Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for compliance
92   via the Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested notice
93   within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation
94   to sell is terminated. Failure to Close due to lack of funds shall be considered default by Buyer.
95 In the event this Agreement is contingent upon an appraisal (See Paragraph 2.C. below), Buyer must order the
96 appraisal and provide Seller with the name and telephone number of the appraisal company and proof that appraisal
97 was ordered within five (5) days of the Binding Agreement Date. Should Buyer fail to do so, Seller may make
98 written demand for compliance via the Notification form or equivalent written notice. If Buyer does not furnish
99 Seller with the requested notice within two (2) days after such demand for compliance, Buyer shall be considered in
100 default and Seller's obligation to sell is terminated.
101 **C.**  **Appraisal (Select either 1 or 2 below. The sections not checked are not a part of this Agreement).**
102   □  1.  This Agreement **IS NOT** contingent upon the appraised value either equaling or exceeding the agreed upon
103     Purchase Price.

This form is copyrighted and may only be used in real estate transactions in which _____ **Christopher Bane** _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE
REALTORS  **Copyright 2015 © Tennessee Realtors®**
    **RF401 – Purchase and Sale Agreement, Page 2 of 10**      **Version 08/21/2017**

Instanet FORMS

Authentisign ID: ECD35D64-768D-4D0A-BABG-C4BEE2AF10BC

104  ☒  2. This Agreement **IS CONTINGENT** upon the appraised value either equaling or exceeding the agreed
105  upon Purchase Price. If the appraised value is equal to or exceeds Purchase Price, this contingency is
106  satisfied. In consideration of Buyer having conducted an appraisal, the sufficiency of such consideration
107  being hereby acknowledged, if the appraised value of the Property does not equal or exceed the Purchase
108  Price, Buyer shall promptly notify the Seller via the notification form or written equivalent notice. Buyer
109  shall then have 3 days to either:
110  1. waive the appraisal contingency via the notification form or equivalent written notice
111  **OR**
112  2. terminate the agreement by giving notice to seller via the notification form or equivalent written
113  notice. Upon timely termination, Buyer is entitled to a refund of the Earnest money.
114  In the event Buyer fails to either waive the appraisal or terminate the agreement as set forth above, this
115  contingency is deemed satisfied. Thereafter, failure to appraise shall not be used as the basis for loan
116  denial or termination of contract. Seller shall have the right to request any supporting documentation
117  showing appraised value did not equal or exceed the agreed upon purchase price

**D. Closing Costs and Discount Points.**

118  **1. Seller Expenses.** Seller shall pay all existing loans and/or liens affecting the Property, including all penalties,
119  release preparation costs, and applicable recording costs; any accrued and/or outstanding association dues or
120  fees; fee (if any) to obtain lien payoff/estoppel letters/statement of accounts from any and all associations,
121  property management companies, mortgage holders or other liens affecting the Property; Seller's closing fee,
122  document preparation fee and/or attorney's fees; fee for preparation of deed; notary fee on deed; and financial
123  institution (Bank, Credit Union, etc.) wire transfer fee or commercial courier service fee related to the
124  disbursement of any lien payoff(s). Seller additionally agrees to permit any withholdings and/or to pay any
125  additional sum due as is required under the Foreign Investment in Real Property Tax Act. Failure to do so will
126  constitute a default by Seller.
127  **In the event Seller is subject to Tax Withholding as required by the Foreign Investment in Real Property**
128  **Tax Act, (hereinafter "FIRPTA"), Seller additionally agrees that such Tax Withholding must be collected**
129  **from Seller by Buyer's Closing Agent at the time of Closing. In the event Seller is not subject to FIRPTA,**
130  **Seller shall be required as a condition of Closing to sign appropriate affidavits certifying that Seller is not**
131  **subject to FIRPTA. *It is Seller's responsibility to seek independent tax advice or counsel prior to the Closing***
132  ***Date regarding such tax matters.***
133  **2. Buyer Expenses.** Buyer shall pay all transfer taxes and recording fees on deed of conveyance and deed of trust;
134  Buyer's closing fee, document preparation fee and/or attorney's fees; preparation of note, deed of trust, and
135  other loan documents; mortgage loan inspection or boundary line survey; credit report; required premiums for
136  private mortgage, hazard and flood insurance; required reserved deposits for insurance premiums and taxes;
137  prepaid interest; re-inspection fees pursuant to appraisal; insured Closing Protection Letter; association fees as
138  stated within paragraph 4.E.; and any costs incident to obtaining and closing a loan, including but not limited to:
139  appraisal, origination, discount points, application, commitment, underwriting, document review, courier,
140  assignment, photo, tax service, notary fees, and any wire fee or other charge imposed for the disbursement of
141  the Seller's proceeds according to the terms of this Agreement.
142  **3. Title Expenses.** Cost of title search, mortgagee's policy and owner's policy (rates to be as filed with the
143  Tennessee Department of Commerce and Insurance) shall be paid as follows:
144  **Each to pay their own**                    .
145  Simultaneous issue rates shall apply.

146  Not all of the above items are applicable to every transaction and may be modified as follows:

147
148
149
150  Closing Agency for Buyer:                    Smoky Mountain Title
151  Closing Agency for Seller:

152  **3. Earnest Money/Trust Money.** Buyer has paid or will pay within __3__ days after the Binding Agreement Date to
153  __Coldwell Banker Wallace & Wallace, Realtors__ (name of Holder) ("Holder") located at
154  __124 N Winston Rd, Knoxville, TN 37919__ (address of Holder), a Earnest
155  Money/Trust Money deposit of $__2500.00__ by check (OR
156  _____) ("Earnest Money/Trust Money").

157  **A. Failure to Receive Earnest Money/Trust Money.** In the event Earnest Money/Trust Money is not timely received
158  by Holder or Earnest Money/Trust Money check or other instrument is not honored for any reason by the bank upon
159  which it is drawn, Holder shall promptly notify Buyer and Seller of the Buyer's failure to deposit the agreed upon

This form is copyrighted and may only be used in real estate transactions in which __Christopher Bane__ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

**TENNESSEE REALTORS**   Copyright 2015 © Tennessee Realtors®
RF401 – Purchase and Sale Agreement, Page 3 of 10              Version 08/21/2017

InstanetFORMS

AuthentiSign ID: ECD35D84-768D-4D0A-BAB6-C4BEE2AF168C

160    **Earnest Money/Trust Money.** Buyer shall then have one (1) day to deliver Earnest Money/Trust Money in
161    immediately available funds to Holder. In the event Buyer does not deliver such funds, Buyer is in default and
162    Seller shall have the right to terminate this Agreement by delivering to Buyer or Buyer's representative written
163    notice via the Notification form or equivalent written notice. In the event Buyer delivers the Earnest Money/Trust
164    Money in immediately available funds to Holder before Seller elects to terminate, Seller shall be deemed to have
165    waived his right to terminate, and the Agreement shall remain in full force and effect.

166    **B. Handling of Earnest Money/Trust Money upon Receipt by Holder.** Earnest Money/Trust Money is to be
167    deposited promptly after the Binding Agreement Date or the agreed upon delivery date in this Earnest Money/Trust
168    Money paragraph or as specified in the Special Stipulations paragraph contained at paragraph 19 herein. Holder
169    shall disburse Earnest Money/Trust Money only as follows:

170      (a) at Closing to be applied as a credit toward Buyer's Purchase Price;
171      (b) upon a written agreement signed by all parties having an interest in the funds;
172      (c) upon order of a court or arbitrator having jurisdiction over any dispute involving the Earnest
173         Money/Trust Money;
174      (d) upon a reasonable interpretation of the Agreement; or
175      (e) upon the filing of an interpleader action with payment to be made to the clerk of the court having
176         jurisdiction over the matter.

177    Holder shall be reimbursed for, and may deduct from any funds interpleaded, its costs and expenses, including
178    reasonable attorney's fees. The prevailing party in the interpleader action shall be entitled to collect from the other
179    party the costs and expenses reimbursed to Holder. No party shall seek damages from Holder (nor shall Holder be
180    liable for the same) for any matter arising out of or related to the performance of Holder's duties under this Earnest
181    Money/Trust Money paragraph. Earnest Money/Trust Money shall not be disbursed prior to fourteen (14) days after
182    deposit unless written evidence of clearance by bank is provided.

183   **4.  Closing, Prorations, Special Assessments and Warranties Transfer.**

184    **A. Closing Date.** This transaction shall be closed ("Closed") (evidenced by delivery of warranty deed and payment of
185    Purchase Price, the "Closing"), and this Agreement shall expire, at 11:59 p.m. local time on the   **19th** day of
186        **December**  ,   **2017**   ("Closing Date"), or on such earlier date as may be agreed to by the
187    parties in writing. Such expiration does not extinguish a party's right to pursue remedies in the event of default.
188    Any extension of this date must be agreed to by the parties in writing via the Closing Date/Possession Date
189    Amendment or equivalent written agreement.

190     **1. Possession.** Possession of the Property is to be given (**Select the appropriate boxes below. Unselected items
191     will not be part of this Agreement**):

192      ☒ at Closing as evidenced by delivery of warranty deed and payment of Purchase Price;
193     **OR**
194      ☐ as agreed in the attached and incorporated Temporary Occupancy Agreement;

195    **B. Prorations.** Real estate taxes, rents, dues, maintenance fees, and association fees on said Property for the calendar
196    year in which the sale is Closed shall be prorated as of the Closing Date. In the event of a change or reassessment of
197    taxes for the calendar year after Closing, the parties agree to pay their recalculated share. Real estate taxes, rents,
198    dues, maintenance fees, and association fees for prior years and roll back taxes, if any, will be paid by Seller.

199    **C. Special Assessments.** Special assessments approved or levied prior to the Closing Date shall be paid by the Seller
200    at or prior to Closing unless otherwise agreed as follows:
201    _____

202    **D. Warranties Transfer.** Seller, at the option of Buyer and at Buyer's cost, agrees to transfer Seller's interest in any
203    manufacturer's warranties, service contracts, termite bond or treatment guarantee and/or similar warranties which by
204    their terms may be transferable to Buyer.

205    **E. Association Fees.** Buyer shall be responsible for all homeowner or condominium association transfer fees, related
206    administration fees (not including statement of accounts), capital expenditures/contributions incurred due to the
207    transfer of Property and/or like expenses which are required by the association, property management company
208    and/or the bylaws, declarations or covenants for the Property (unless otherwise specifically addressed herein and/or
209    unless specifically chargeable to Seller under applicable bylaws, declarations, and/or neighborhood covenants).

210   **5.  Title and Conveyance.**

211    **A.** Seller warrants that at the time of Closing, Seller will convey or cause to be conveyed to Buyer or Buyer's assign(s)
212    good and marketable title to said Property by general warranty deed, subject only to:

213      (1) zoning;
214      (2) setback requirements and general utility, sewer, and drainage easements of record on the Binding

This form is copyrighted and may only be used in real estate transactions in which   **Christopher Bane**   is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE   **Copyright 2015 © Tennessee Realtors®**
REALTORS®   **RF401 – Purchase and Sale Agreement, Page 4 of 10**           **Version 08/21/2017**

InstanetFORMS

Authentisign ID: ECD35D64-756D-4D0A-BAB6-C4BEE2AF10BC

215      Agreement Date upon which the improvements do not encroach;

216      (3) subdivision and/or condominium declarations, covenants, restrictions, and easements of record on the
217      Binding Agreement Date; and

218      (4) *leases and other encumbrances specified in this Agreement.*

219      If title examination, closing or loan survey pursuant to Tenn. Code Ann. § 62-18-126, boundary line survey, or other
220      information discloses material defects, Buyer may, at Buyer's discretion:

221      (1) accept the Property with the defects **OR**

222      (2) require Seller to remedy such defects prior to the Closing Date. Buyer shall provide Seller with written
223      notice of such defects via the Notification form or equivalent written notice. If defects are not remedied
224      prior to Closing Date, Buyer and Seller may elect to extend the Closing Date by mutual written agreement
225      evidenced by the Closing Date/Possession Amendment form or other written equivalent. If defects are not
226      remedied by the Closing Date or any mutually agreed upon extension thereof, this Agreement shall
227      terminate, and Buyer shall be entitled to refund of Earnest Money/Trust Money.

228      Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in
229      Tennessee will insure at its regular rates, subject only to standard exceptions. The title search or abstract used for
230      the purpose of evidencing good and marketable title must be acceptable to the title insurance agent and the issuing
231      title insurance company. Seller agrees to execute such appropriate affidavits and instruments as may be required by
232      the issuing title insurance company.

233      **B. Deed.** Deed is to be made in the name of _____ **Lorie D. Bane** _____.
234      The manner in which Buyer takes title determines ownership and survivorship rights. It is the Buyer's responsibility
235      to consult the closing agency or attorney prior to Closing.

236    **6. Seller's Property Disclosure.** Pursuant to the requirements of the Tennessee Residential Property Condition Disclosure
237      Act at Tenn. Code Ann. § 66-5-201, et seq. as amended, a Property Condition Disclosure Statement, Exemption, or if
238      Buyer waives Disclosure, a Disclaimer, has been or will be provided prior to the Binding Agreement Date.

239    **7. Lead-Based Paint Disclosure (Select the appropriate box. Items not selected are not part of this Agreement).**
240      ☒ does not apply.     ☐ does apply (Property built prior to 1978 – see attached Lead-Based Paint Disclosure).

241    **8. Inspections.**
242      **A. Buyer's Right to Make Inspection(s). All inspections/reports, including but not limited to the home inspection**
243      **report, those required/recommended in the home inspection report, Wood Destroying Insect Infestation**
244      **Inspection Report, septic inspection and well water test, are to be made at Buyer's expense, unless otherwise**
245      **stipulated in this Agreement.** The parties hereto agree that in the event Buyer shall elect to contract with a third
246      party inspector to obtain a "Home Inspection" as defined by Tennessee law, said inspection shall be conducted by a
247      licensed Home Inspector. However, nothing in this paragraph shall preclude Buyer from conducting any inspections
248      on his/her own behalf, nor shall it preclude Buyer from retaining a qualified (and if required by law, licensed)
249      professional to conduct inspections of particular systems or issues within such professional's expertise or licensure,
250      including but not limited to inspection of the heating/cooling systems, electrical systems, foundation, etc., so long as
251      said professional is not in violation of Tenn. Code Ann. § 62-6-301, et seq. as may be amended. **Seller shall cause**
252      **all utility services and any pool, spa, and similar items to be operational so that Buyer may complete all**
253      **inspections and tests under this Agreement.** Buyer agrees to indemnify Seller from the acts of himself, his
254      inspectors and/or representatives in exercising his rights under this Purchase and Sale Agreement. Buyer's
255      obligations to indemnify Seller shall also survive the termination of this Agreement by either party, which shall
256      remain enforceable. Buyer waives any objections to matters of purely cosmetic nature (e.g. decorative, color or
257      **finish items) disclosed by inspection. Buyer has no right to require repairs or alterations purely to meet**
258      **current building codes, unless required to do so by governmental authorities.** *In the event Buyer fails to timely*
259      *make such inspections and respond within said timeframe as described herein, the Buyer shall have forfeited any*
260      *rights provided under this Paragraph 8, and in such case shall accept the Property in its current condition,*
261      *normal wear and tear excepted.*

262      **B. Initial Inspections.** Buyer and/or his inspectors/representatives shall have the right and responsibility to enter the
263      Property during normal business hours, for the purpose of making inspections and/or tests of the Property. Buyer
264      and/or his inspectors/representatives shall have the right to perform a visual analysis of the condition of the
265      Property, any reasonably accessible installed components, the operation of the Property's systems, including any
266      controls normally operated by Seller including the following components: heating systems, cooling systems,
267      electrical systems, plumbing systems, structural components, foundations, roof coverings, exterior and interior
268      components, any other site aspects that affect the Property, and environmental issues.

This form is copyrighted and may only be used in real estate transactions in which    **Christopher Bane**    is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

**TENNESSEE REALTORS**  Copyright 2016 © Tennessee Realtors®
     RF401 – Purchase and Sale Agreement, Page 5 of 10      Version 08/21/2017

InstanetFORMS

Authentisign ID: ECD35D64-768D-4D0A-BAB6-C4BEE2AF10BC

269  **C. Wood Destroying Insect Infestation Inspection Report.** If desired by Buyer or required by Buyer's Lender, it
270  shall be Buyer's responsibility to obtain *at Buyer's expense* a Wood Destroying Insect Infestation Inspection Report
271  (the "Report"), which shall be made by a Tennessee licensed and chartered pest control operator.
272  **The foregoing expense may be subject to governmental guidelines relating to VA Loans (See VA/FHA Loan**
273  **Addendum if applicable).**
274  The inspection shall include each dwelling, garage, and other permanent structure on the Property excluding
275  _____ for evidence of active infestation and/or damage.
276  Buyer shall cause such Report to be delivered to Seller simultaneously with any repairs requested by the Buyer or
277  the end of the Inspection Period, whichever is earlier. If the Report indicates evidence of active infestation, Seller
278  agrees to treat infestation at Seller's expense and provide documentation of the treatment to Buyer prior to Closing.
279  Requests for repair of damage, if any, should be addressed in the Buyer's request for repairs pursuant to
280  Subparagraph 8.D., Buyer's Inspection and Resolution below.

281  **D. Buyer's Inspection and Resolution.** Within _____10_____ days after the Binding Agreement Date ("Inspection
282  Period"), Buyer shall cause to be conducted any inspection provided for herein, including but not limited to the
283  Wood Destroying Insect Infestation Inspection Report AND shall provide written notice of such to Seller as
284  described below. **In said notice Buyer shall either:**
285  (1) In consideration of Buyer having conducted Buyer's good faith inspections as provided for herein, the
286  sufficiency of such consideration being hereby acknowledged, Buyer shall furnish Seller with a list of
287  written specified objections and immediately terminate this Agreement via the Notification form or
288  equivalent written notice. All Earnest Money/Trust Money shall be returned to Buyer upon termination.
289  **OR**
290  (2) accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or
291  implied via the Notification form or equivalent written notice. Seller has no obligation to make repairs.
292  **OR**
293  (3) furnish Seller a written list of items which Buyer requires to be repaired and/or replaced with like quality or
294  value in a professional and workmanlike manner. Seller shall have the right to request any supporting
295  documentation that substantiates any item listed.
296  a. Resolution Period. Seller and Buyer shall then have a period of _____5_____ days following receipt of
297  the above stated written list ("Resolution Period") to reach a mutual agreement as to the items to
298  be repaired or replaced with like quality or value by Seller, which shall be evidenced by the
299  Repair / Replacement Amendment or written equivalent(s). *The parties agree to negotiate repairs*
300  *in good faith during the Resolution Period.* In the event Seller and Buyer do not reach a mutual
301  written resolution during such Resolution Period or a mutually agreeable written extension thereof
302  as evidenced in an Amendment to this Agreement signed by both parties within said period of
303  time, this Agreement is hereby terminated. If terminated, Buyer is entitled to a refund of the
304  Earnest Money/Trust Money.

305  ☐ **E. Waiver of All Inspections. THIS BOX MUST BE CHECKED TO BE PART OF THIS AGREEMENT.**
306  **Buyer, having been advised of the benefits of inspections, waives any and all Inspection Rights under this**
307  **Paragraph 8 (including but not limited to the Wood Destroying Insect Infestation Inspection Report).**

308  **9. Final Inspection.** Buyer and/or his inspectors/representatives shall have the right to conduct a final inspection of
309  Property on the Closing Date and/or within _____1_____ day(s) prior to the Closing Date only to confirm Property is in the same
310  or better condition as it was on the Binding Agreement Date, normal wear and tear excepted, and to determine that all
311  repairs/replacements agreed to during the Resolution Period, if any, have been completed. Property shall remain in such
312  condition until Closing at Seller's expense. Closing of this sale constitutes acceptance of Property in its condition as of
313  the time of Closing, unless otherwise noted in writing.

314  **10. Buyer's Additional Due Diligence Options.** If any of the matters below are of concern to Buyer, Buyer should address
315  the concern by specific contingency in the Special Stipulations Paragraph of this Agreement.

316  **A. Survey and Flood Certification.** Survey Work and Flood Certifications are the best means of identifying boundary
317  lines and/or encroachments and easements or flood zone classifications. Buyer may obtain a Mortgage Inspection or
318  Boundary Line Survey and Flood Zone Certifications.

319  **B. Insurability.** Many different issues can affect the insurability and the rates of insurance for property. These include
320  factors such as changes in the Flood Zone Certifications, changes to the earthquake zones maps, the insurability of
321  the buyer, and previous claims made on the Property. It is the right and responsibility of Buyer to determine the
322  insurability, coverage and the cost of insuring the Property. It is also the responsibility of Buyer to determine
323  whether any exclusions will apply to the insurability of said Property.

This form is copyrighted and may only be used in real estate transactions in which _____**Christopher Bane**_____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

**TENNESSEE
REALTORS**   Copyright 2015 © Tennessee Realtors®
RF401 – Purchase and Sale Agreement, Page 6 of 10          Version 08/21/2017

InstanetFORMS

Authentisign ID: ECD35D84-766D-4D0A-BAB6-C4BEE2AF10BC

C. **Water Supply.** The system may or may not meet state and local requirements. It is the right and responsibility of Buyer to determine the compliance of the system with state and local requirements. [For additional information on this subject, request the "Water Supply and Waste Disposal Notification" form.]

D. **Waste Disposal.** The system may or may not meet state and local requirements. It is the right and responsibility of Buyer to determine the compliance of the system with state and local requirements. In addition, Buyer may, for a fee, obtain a septic system inspection letter from the Tennessee Department of Environment and Conservation, Division of Ground Water Protection. [For additional information on this subject, request the "Water Supply and Waste Disposal Notification" form.]

E. **Title Exceptions.** At Closing, the general warranty deed will be subject to subdivision and/or condominium declarations, covenants, restrictions and easements of record, which may impose obligations and may limit the use of the Property by Buyer.

11. **Disclaimer.** It is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting Seller and/or Buyer and their brokers (collectively referred to as "Brokers") are not parties to this Agreement and do not have or assume liability for the performance or nonperformance of Seller or Buyer. Buyer and Seller agree that Brokers shall not be responsible for any of the following, including but not limited to, those matters which could have been revealed through a survey, flood certification, title search or inspection of the Property; the insurability of the Property or cost to insure the Property; for the condition of the Property, any portion thereof, or any item therein; for any geological issues present on the Property; for any issues arising out of the failure to physically inspect Property prior to entering into this Agreement and/or Closing; for the necessity or cost of any repairs to the Property; for hazardous or toxic materials; for the tax or legal consequences of this transaction; for the availability, capability, and/or cost of utility, sewer, septic, or community amenities; for any proposed or pending condemnation actions involving Property; for applicable boundaries of school districts or other school information; for the appraised or future value of the Property; for square footage or acreage of the Property; for any condition(s) existing off the Property which may affect the Property; for the terms, conditions, and availability of financing; and/or for the uses and zoning of the Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that they have not relied upon any advice, representations or statements of Brokers (including their firms and affiliated licensees) and waive and shall not assert any claims against Brokers (including their firms and affiliated licensees) involving same. Buyer and Seller understand that it has been strongly recommended that if any of these or any other matters concerning the Property are of concern to them, that they secure the services of appropriately credentialed experts and professionals of Buyer's or Seller's choice for the independent expert advice and counsel relative thereto.

12. **Brokerage.** As specified by separate agreement, Seller agrees to pay Listing Broker at Closing the agreed upon compensation. The Listing Broker will direct the closing agency to pay the Selling Broker, from the compensation received, an amount in accordance with the terms and provisions specified by separate agreement. The parties agree and acknowledge that the Brokers involved in this transaction may receive compensation from more than one party. All parties to this Agreement agree and acknowledge that any real estate firm involved in this transaction shall be deemed a third party beneficiary only for the purposes of enforcing their commission rights, and as such, shall have the right to maintain an action on this Agreement for any and all compensations due and any reasonable attorney's fees and court costs.

13. **Default.** Should Buyer default hereunder, the Earnest Money/Trust Money shall be forfeited as damages to Seller and shall be applied as a credit against Seller's damages. Seller may elect to sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. Should Seller default, Buyer's Earnest Money/Trust Money shall be refunded to Buyer. In addition, Buyer may elect to sue, in contract or tort, for damages or specific performance of this Agreement, or both. In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees. In the event that any party exercises its right to terminate due to the default of the other pursuant to the terms of this Agreement, the terminating party retains the right to pursue any and all legal rights and remedies against the defaulting party following termination. The parties hereby agree that all remedies are fair and equitable and neither party will assert the lack of mutuality of remedies, rights and/or obligations as a defense in the event of a dispute.

14. **Home Protection Plan.** This is not a substitution for Home Inspection. Exclusions to coverage may apply. **(Select the appropriate box below. Items not selected are not part of this Agreement).**

☐ Home Protection Plan. _____ to pay $_____ for the purchase of a limited home protection plan to be funded at Closing. Plan Provider: _____
   Ordered by: _____ (Real Estate Company)

☒ Home Protection Plan waived.

This form is copyrighted and may only be used in real estate transactions in which _____ **Christopher Bane** _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE
REALTORS®     Copyright 2015 © Tennessee Realtors®
              RF401 – Purchase and Sale Agreement, Page 7 of 10

Version 08/21/2017

InstanetFORMS

Authentisign ID: EC035D64-768D-4D0A-BAB6-C4BEE2AF10BC

## 15. Other Provisions.

**A. Binding Effect, Entire Agreement, Modification, Assignment, and Binding Agreement Date.** This Agreement shall be for the benefit of, and be binding upon, the parties hereto, their heirs, successors, legal representatives and assigns. This Agreement constitutes the sole and entire agreement between the parties hereto and no modification of this Agreement shall be binding unless signed by all parties or assigns to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto. It is hereby agreed by both Buyer and Seller that any real estate agent working with or representing either party shall not have the authority to bind the Buyer, Seller or any assignee to any contractual agreement unless specifically authorized in writing within this Agreement. Any assignee shall fulfill all the terms and conditions of this Agreement. The parties hereby authorize either licensee to insert the time and date of receipt of the notice of acceptance of the final offer and further agree to be bound by such as the Binding Agreement Date following the signatory section of this Agreement, or Counter Offer, if applicable.

**B. Survival Clause.** Any provision contained herein, which by its nature and effect is required to be performed after Closing, shall survive the Closing and delivery of the deed and shall remain binding upon the parties to this Agreement and shall be fully enforceable thereafter.

**C. Governing Law and Venue.** This Agreement is intended as a contract for the purchase and sale of real property and shall be governed by and interpreted in accordance with the laws and in the courts of the State of Tennessee.

**D. Time of Essence.** Time is of the essence in this Agreement.

**E. Terminology.** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; (2) all pronouns shall mean and include the person, entity, firm or corporation to which they relate; (3) the masculine shall mean the feminine and vice versa; and (4) the term day(s) used throughout this Agreement shall be deemed to be calendar day(s) ending at 11:59 p.m. local time unless otherwise specified in this Agreement. Local time shall be determined by the location of Property. **In the event a performance deadline,** other than the Closing Date (as defined in paragraph 4 herein), Date of Possession (as defined in paragraph 4 herein), Completion of Repair Deadline (as defined in the Repair/Replacement Amendment), and Offer Expiration Date (as defined in paragraph 20 herein), occurs on a Saturday, Sunday or legal holiday, the performance deadline shall extend to the next following business day. Holidays as used herein are those days deemed federal holidays pursuant to 5 U.S.C. § 6103. In calculating any time period under this Agreement, the commencement shall be the day following the initial date (e.g. Binding Agreement Date).

**F. Responsibility to Cooperate.** Buyer and Seller agree to timely take such actions and produce, execute, and/or deliver such information and documentation as is reasonably necessary to carry out the responsibilities and obligations of this Agreement. Except as to matters which are occasioned by clerical errors or omissions or erroneous information, the approval of the closing documents by the parties shall constitute their approval of any differences between this Agreement and the Closing. Buyer and Seller agree that if requested after Closing, they will correct any documents and pay any amounts due where such corrections or payments are appropriate by reason of mistake, clerical errors or omissions, or the result of erroneous information.

**G. Notices.** Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered either (1) in person; (2) by a prepaid overnight delivery service; (3) by facsimile transmission (FAX); (4) by the United States Postal Service, postage prepaid, registered or certified, return receipt requested; or (5) Email. NOTICE shall be deemed to have been given as of the date and time it is actually received. Receipt of notice by the real estate licensee or their Broker assisting a party as a client or customer shall be deemed to be notice to that party for all purposes under this Agreement as may be amended, unless otherwise provided in writing.

**H. Risk of Loss.** The risk of hazard or casualty loss or damage to Property shall be borne by the Seller until transfer of title. If casualty loss prior to Closing exceeds 10% of the Purchase Price, Seller or Buyer may elect to terminate this Agreement with a refund of Earnest Money/Trust Money to Buyer.

**I. Equal Housing.** This Property is being sold without regard to race, color, sex, religion, handicap, familial status, or national origin.

**J. Severability.** If any portion or provision of this Agreement is held or adjudicated to be invalid or unenforceable for any reason, each such portion or provision shall be severed from the remaining portions or provisions of this Agreement, and the remaining portions or provisions shall be unaffected and remain in full force and effect. In the event that the contract fails due to the severed provisions, then the offending language shall be amended to be in conformity with state and federal law.

This form is copyrighted and may only be used in real estate transactions in which ____**Christopher Bane**____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS    Copyright 2015 © Tennessee Realtors®
RF401 – Purchase and Sale Agreement, Page 8 of 10                    Version 08/21/2017

InstanetFORMS

Authentisign ID: ECD35D64-768D-4D0A-BAB5-C49EE2AF10BC

431   **K.  Contract Construction.** This Agreement or any uncertainty or ambiguity herein shall not be construed against any
432   party but shall be construed as if all parties to this Agreement jointly prepared this Agreement.

433   **16. Seller's Additional Obligations.** If Seller has any knowledge of an exterior injection well, a sinkhole as defined
434   pursuant to Tenn. Code Ann. § 66-5-212(c), and/or a percolation test or soil absorption rate on the Property, Seller shall be
435   obligated to counter this offer by disclosure of the existence of the above including any tests and reports unless disclosure has
436   already been received and acknowledged in writing by Buyer.  Seller shall also disclose in the same manner whether any
437   single family residence located on the Property has been moved from an existing foundation to another foundation where
438   such information is known to the Seller.  Seller shall also be obligated to counter this offer to disclose if the Property is
439   located in a Planned Unit Development (PUD) as defined pursuant to Tenn. Code Ann. § 66-5-213 unless said disclosure has
440   already been received in writing and acknowledged by Buyer.  If the Property is in a PUD, Seller agrees to make available
441   copies of the development's restrictive covenants, homeowner bylaws, and master deed to Buyer upon request.

442   **17. Method of Execution.**  The parties agree that signatures and initials transmitted by facsimile, other photocopy
443   transmittal, or by transmittal of digital signature as defined by the applicable State or Federal law will be acceptable and
444   may be treated as originals and that the final Purchase and Sale Agreement containing all signatures and initials may be
445   executed partially by original signature and partially on facsimile, other photocopy documents, or by digital signature as
446   defined by the applicable State or Federal law.

447   **18. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part
448   of this Agreement:

449
450
451

452   **19. Special Stipulations.** The following Special Stipulations, if conflicting with any preceding paragraph, shall control:
453   **Seller will give $2000.00 credit at closing for appliances.**

454
455
456
457
458
459
460
461
462
463
464
465
466
467
468
469
470
471
472
473
474
475
476
477
478
479
480
481
482
483
484
485

This form is copyrighted and may only be used in real estate transactions in which _____ **Christopher Bane** _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

**TENNESSEE REALTORS**    Copyright 2015 © Tennessee Realtors®
RF401 – Purchase and Sale Agreement, Page 9 of 10

Version 08/21/2017

InstanetFORMS

11/06/2017
Authentisign ID: ECD35D64-7660-4D0A-0AB6-C4BEE2AF10BC

488  20. **Time Limit of Offer.** This Offer may be withdrawn at any time before acceptance with Notice. Offer terminates if not
487  countered or accepted by ____1:00____ o'clock ☐ a.m./ ☑ p.m. on the ___8___ day of _____Nov_____ ___17___.

488  **LEGAL DOCUMENTS:** This is an important legal document creating valuable rights and obligations. If you have
489  any questions about it, you should review it with your attorney. Neither the Broker nor any Agent or Facilitator is
490  authorized or qualified to give you any advice about the advisability or legal effect of its provisions.

491  **NOTE:** Any provisions of this Agreement which are preceded by a box "☐" must be marked to be a part of this
492  Agreement. By affixing your signature below, you also acknowledge that you have reviewed each page and have
493  received a copy of this Agreement.

494  **IMPORTANT NOTICE:** Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts
495  and sending emails with fake wiring instructions. These emails are convincing and sophisticated.
496  Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone
497  number. Never wire money without double-checking that the wiring instructions are correct.

498  Buyer hereby makes this offer.
499  *Lorie D. Bane*
500  BUYER Lorie D. Bane                              BUYER
501  11/06/2017
501  _____ at ____ o'clock ☐ am/ ☐ pm       _____ at ____ o'clock ☐ am/ ☐ pm
502  Offer Date                                        Offer Date

503  Seller hereby:
504      _____ ACCEPTS  accepts this offer.
505      __X__ COUNTERS  accepts this offer subject to the attached Counter Offer(s).
506      _____ REJECTS this offer and makes no counter offer.
507
508  SELLER  Trustee                                  SELLER
509  11/7/17 at ____ o'clock X am/ ☐ pm            _____ at ____ o'clock ☐ am/ ☐ pm
510  Date                                              Date

511  **Binding Agreement Date.** This instrument shall become a "Binding Agreement" on the date ("Binding Agreement Date")
512  the last offeror, or licensee of the offeror, receives notice of offeree's acceptance.
513  Notice of acceptance of the final offer was received on the _____ day of _____ at ____ o'clock ☐ am/ ☐ pm
514  by _____ (Name).

**For Information Purposes Only:**

| | |
|---|---|
| Listing Company: Coldwell Banker Wallace & Wallace, Realtors | Selling Company: All Pro REALTORS, Inc. |
| Listing Firm Address: 124 N Winston Rd | Selling Firm Address: 635 Wall Street |
| Firm License No.: 1961 | Firm License No.: 255969 |
| Firm Telephone No.: (865) 693-1111 | Firm Telephone No.: 865-436-2849 |
| Listing Licensee: Mark Lane | Selling Licensee: Christopher Bane |
| Licensee License Number: 303501 | Licensee License Number: 342809 |
| Licensee Email: mlano32@comcast.net | Licensee Email: chris@gatlinburghomes.com |

Home Owner's  Condominium Association ("HOA/COA"): _____

HOA/COA Phone: _____    HOA/COA Email: _____
Property Management Company: _____
Phone: _____    Email: _____

OTE: This form is part of a TAR package of forms used in real estate transactions and is to be used only by members. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as provided below, as the blank fields, and agree and acknowledge that any such alteration, amendment or editing of said form is done at your own risk. Use of the TAR logo in conjunction with any form other than standardized forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.

This form is copyrighted and may only be used in real estate transactions in which ____Christopher Bane____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors at (615) 321-1477.

Copyright 2015 © Tennessee Realtors'
RF401 – Purchase and Sale Agreement, Page 10 of 10

Version 08/21/2017

Instanet



WALLACE & WALLACE
REALTORS

## COUNTER OFFER # _____

1  This is a Counter Offer from    ☒ Seller to Buyer  OR    ☐ Buyer to Seller
2  Seller Name: _____ **Michael Fitzpatrick - Trustee** _____  Seller Name: _____
3  Buyer Name: _____ **Loris D Bang** _____  Buyer Name: _____
4  The undersigned agree to and accept the Purchase and Sale Agreement with an offer date of _____ **11/06/17** _____ for the
5  purchase of real property commonly known as:
6  ____ **1463    River Run Cir** _____ ____ **Sevierville** ____ **TN** ____ **37876** ____
7                                    Address, City, State, Zip
   With the following exceptions:
      **1) Line 451 to read "Smoky Mountain Title" as Closing Agency for Seller.**
      **2) Line 153 to read "All-Pro Realtors" as holder of Earnest Money.**
12    **3) Line 154 to read "635 Wall St / Suite 2, Sevierville, TN. 37862" as address of holder.**
13    **4) Property being sold strictly "AS IS WHERE IS". Seller to make no repairs so therefore there**
14    **will be no Resolution Period as referenced on Lines 296-304.**
15    **5) Contingent upon Final Bankruptcy Court Approval.**

22  ALL OTHER TERMS AND CONDITIONS OF THE ORIGINAL ATTACHED PURCHASE AND SALE
23  AGREEMENT ARE ACCEPTABLE TO THE UNDERSIGNED. ALL TERMS AND CONDITIONS PROPOSED
24  IN PREVIOUS COUNTER OFFERS, IF ANY, ARE NOT INCLUDED IN THIS COUNTER OFFER UNLESS
25  RESTATED HEREIN.
26  This Counter Offer form will not be a part of the Purchase and Sale Agreement and be binding until accepted and
27  signed by all parties.
28  Until notice of acceptance is delivered the subject Property is still on the market for sale, and this offer may be revoked at
29  any time with notice, and the Property may be sold to any other party.
30  Time Limit of Offer:  This Offer may be withdrawn at any time before acceptance with notice.  Offer terminates if not
31  accepted by ___ 9 ___ o'clock noon local time, on the ___ 8th ___ day of ___ November ___ ___ 2017 ___

32  _____ 11/7/17    _____
33  Seller/Buyer (Party making counter offer) DATE    Seller/Buyer (Party making counter offer) DATE

34  The undersigned has received and
35    ☒ ACCEPTED this offer
36    ☐ REJECTED this offer
37    ☐ COUNTERED this offer with Counter Offer # _____
38  at 12 45 o'clock a.m/p.m on 7th day of ___ November ___ 2017 ___

39  _____    _____
40  Seller/Buyer (Responding Party)    Seller/Buyer (Responding Party)

41  Binding Agreement Date. This instrument shall become a "Binding Agreement" on the date ("Binding Agreement Date")
42  the last offeror or licensee of offeror receives notice of offeree's acceptance.  Notice of acceptance of the final offer was
43  received on the ___ 7 ___ day of ___ November 2017 ___ at ___ 4:00 ___ p.m.
44

NOTE: This form is provided by TAR to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that your use of this form as an intended user of the form is subject to the terms and conditions of this TAR agreement in the TAR logo in connection with your transaction. This standardized document should only be used in simple residential real estate transactions. Use of this form is subject to periodic revision and it is the responsibility of the member to use the most recent version.

This form is copyrighted and may only be used in real estate transactions in which _____ **Mark Lane** _____ is involved as a TAR authorized user.  Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors at (615-321-1477).

REALTORS        Copyright 2010 © Tennessee Realtors®        Version 01/01/2017
                RF651 – Counter Offer, Page 1 of 1

**CHRISTOPHER M. BANE**    08-17                                                      **1028**
**LORIE D. BANE**
310 WHITE OAK CIRCLE                                                          87-196/642
KODAK, TN 37764

11-6-17

All-Pro Realtors                          $ 2,500

two thousand five hundred dollars and — $\frac{00}{100}$    Dollars

**Tennessee**
**State Bank**
www.tnstatebank.com

earnest $                                Lorie D. Bane



"Banking at its Best"

November 6, 2017

Lorie Dawn Bane
310 White Oak Circle
Kodak, TN 37764

RE: Mortgage Loan Pre-Qualification

Dear Lorie:

Based on our analysis of credit, employment, and your stated income and asset information you have provided us, you may qualify for a FHA mortgage loan with a sales price of $245,000.00.

PLEASE NOTE: This pre-qualification is based upon preliminary unverified information, which although may be deemed to be reliable, is not guaranteed to be correct. A loan decision cannot be made until a complete mortgage application and supporting documentation is received and verified. This letter does not guarantee loan approval, nor is it an offer or commitment to rate, fees, or term. Interest rates are subject to change daily without notice and may affect the loan amount for which you qualify. Additionally, any misrepresentation in the loan application or adverse change in the applicant's financial position may void this pre-qualification letter.

If you have any questions, please feel free to contact me at (865) 453-0873. I would be happy to assist you in any way I can. I truly appreciate the opportunity to be of service.

Sincerely,

Kristin L. Lewis
Mortgage Loan Officer
NMLS #410553

Tennessee State Bank - Mortgage Loan Dept - Sevierville Office
161 Forks of the River Parkway, P.O. Box 4460 - Sevierville, TN 37864
Phone (865) 453-4629 - Fax (865) 429-2842
www.tnstatebank.com

## ADDENDUM TO PURCHASE AND SALE AGREEMENT
## FOR PROPERTY SOLD BY BANKRUPTCY TRUSTEE

1) This sale is subject to the approval of the United States Bankruptcy Court and the Seller shall file a motion to approve the sale upon receipt of acceptable offer.
2) The Bankruptcy Trustee shall transfer the property at closing via a Trustee's Deed, not the General Warranty Deed as may be stated in the Purchase and Sale Agreement.
3) There shall be no Seller's Property Condition Disclosure and any reference thereto is hereby deleted from the Purchase and Sale Agreement.
4) At the closing of the Transaction, this property is sold "AS IS" and "WHERE IS" with no warranties either expressed or implied.
5) Seller is the Chapter 7 Bankruptcy Trustee and will make no warranties of the title or condition concerning the property and the Buyer/Purchaser acknowledges that Buyer/Purchaser is responsible to perform its own due diligence.  At the closing of the Transaction, Buyer/Purchaser shall be able to purchase title insurance if desired.  The option to purchase title insurance must be available to the Buyer/Purchaser or this contract is voidable.
6) In the event the sale of this property does not close, there shall be no commission owed by the Seller.
7) Section D (Buyer's Inspection Period and Resolution) of the Purchase and Sale Agreement is hereby amended to reflect that the Buyer/Purchaser shall be responsible for having any and all utilities turned on for the purpose of performing any and all inspections and/or appraisals.
8) It is the responsibility of the Buyer/Purchaser to acquire any information regarding homeowner associations and or associated homeowner fees.  Furthermore, any associated homeowner fees shall be the responsibility of the Buyer/Purchaser.

Property Address:     __1463 River Run Circle__
__Sevierville, TN. 37876__

Parcel ID/Tax ID:     __016K B 031.00  (Sevier County)__

_Brose D Bane_ _____
Buyer/Purchaser          __11-6-17__
                                        Date

Buyer/Purchaser

                        Date

Authentisign ID: 411CB9B1-A5DD-446B-A276-76A017A40BA9

# PERSONAL INTEREST DISCLOSURE & CONSENT

1  On occasion, a real estate licensee may become involved in a real estate transaction BOTH as a licensed real estate
2  professional AND as a party – directly or indirectly – to the transaction. The Real Estate Broker Licensing Act requires that
3  a licensee's personal interest in any transaction be disclosed. Further, said Act requires the written consent of all parties to a
4  transaction with regard to certain personal interests.

5                                            **As used below:**

6                    •   "Buyer" shall mean Buyer or Tenant.

7                    •   "Seller" shall mean Seller or Landlord.

8  **DISCLOSURE AND CONSENT AS TO LICENSEE'S PERSONAL INTEREST:**

9  **[Pursuant to Section 62-13-403(7)(A) of the Tennessee Real Estate Broker Licensing Act, a licensee shall:**
10  **"Not engage in self-dealing nor act on behalf of a licensee's immediate family, or on behalf of any other**
11  **individual, organization or business entity in which the licensee has a personal interest without prior**
12  **disclosure of such interest and the timely written consent of all parties to the transaction."]**

13  1.  **Nature of Interest.  [Licensee to disclose nature of personal interest by checking appropriate box(es)**
14      **below.]**

15      Licensee _____ Chris Bane _____ has a personal interest
16      with regard to the sale of the property located at
17      _____ 1463  River Run Circle _____ Sevierville _____ TN _____ 37876 _____.

18      The licensee's personal interest is as follows:

19      ☐   the licensee is the seller/owner of this property.

20      ☐   an immediate family member of the licensee is the seller of the property.

21  ☐   any other individual, organization or business entity in which the licensee has a personal interest is the
22      seller of the property.

23      ☐   the licensee is a prospective buyer of the property.

24      ☒   an immediate family member of the licensee is the prospective buyer of the property.

25  ☐   any other individual, organization or business entity in which the licensee has a personal interest is a
26      prospective buyer of the property.

27      ☐   other

28  2.  **Consent of Continued Involvement.**

29      Buyer and Seller consent to the undersigned licensee's continued involvement in the subject transaction.

This form is copyrighted and may only be used in real estate transactions in which _____ **Christopher Bane** _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE
REALTORS            Copyright 2011 © Tennessee Realtors®
                    RF305 – Personal Interest Disclosure & Consent, Page 1 of 2            Version 01/01/2017

InstanetFORMS

AuthentiSign ID: 411C09B1-A6DD-4A6B-A275-78A617A40BA9

**Shall Be Signed by Licensee making disclosure, Buyer and Seller Prior to Execution of a Real Estate Contract:**

The party(ies) below have signed and acknowledge receipt of a copy.

LICENSEE Chris
All Pro Realtors, Inc.
FIRM/COMPANY
11/9/11 at 4:50 o'clock ☐ am. ☑ pm
635 Wall Street, STE 2, Sevierville, TN 37862
Date
ADDRESS:
PHONE: 865-436-2849  FAX:
EMAIL:    chris@gatlinburghomes.com

The party(ies) below have signed and acknowledge receipt of a copy.

Levie D. Bane
BUYER Levie D. Bane
BUYER
11/08/2017 at o'clock ☐ am ☐ pm
at o'clock ☐ am ☐ pm
Date
Date

The party(ies) below have signed and acknowledge receipt of a copy.

SELLER Thurston
at o'clock ☐ am ☐ pm
at o'clock ☐ am ☐ pm
Date
Date

NOTE: This form is provided by TAR to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the TAR logo in connection with any form other than standardized forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.

This form is copyrighted and may only be used in real estate transactions in which ____Christopher Bane____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

Copyright 2011 © Tennessee Realtors®
RF305 – Personal Interest Disclosure & Consent, Page 2 of 2

Version 01/01/2017

Instanet

Authentisign ID: A7C29B36-F1DA-4B55-86B0-86EC82903862

# VA / FHA LOAN
# ADDENDUM

1  Property Address: 1463 River Run Circle _____ Sevierville ___ TN ___ 37876
2  Buyer: _____ Lorie D. Bane _____
3  Seller: _____ Trustee _____

4  This VA/FHA LOAN ADDENDUM (hereinafter "Addendum"), between the undersigned Seller and Buyer is entered into
5  and is effective as of the Binding Agreement Date provided in the Purchase and Sale Agreement for the purpose of changing,
6  deleting, supplementing or adding terms to said Purchase and Sale Agreement. In consideration of the mutual covenants
7  herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties
8  agree as follows:

9  **1.  APPRAISED VALUE.**   It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer
10  shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of
11  earnest money/trust money deposits or otherwise unless the Buyer has been given, in accordance with HUD/FHA or VA
12  requirements, a written statement by the Federal Housing Commissioner or Veterans Administration, or a Direct
13  Endorsement Lender setting forth the appraised value of the Property of not less than $ __Purchase Price__ . The Buyer
14  shall, however, have the privilege and option of proceeding with consummation of the contract without regard to the
15  amount of the appraised valuation.  The appraised valuation is arrived at to determine the maximum mortgage the
16  Department of Housing and Urban Development will insure (FHA), or that the Veteran's Administration (VA) will
17  guarantee.

18  **2.  PROPERTY VALUE AND CONDITION.**  HUD does not warrant the value nor the condition of the Property.  The
19  Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

20  **3.  HOME INSPECTION.**  It is important for Buyer to have a home inspection performed on the Property he wishes to
21  purchase in order to identify any possible defects.  Names of home inspection companies can be found in the yellow
22  pages of the local telephone directory under the heading "Home Inspection Services." See Form RF712, "GET A
23  HOME INSPECTION AND PROPERTY SURVEY."

24  **4.  FUNDING FEE.** If applicable, the VA Funding fee shall be paid as follows:

25  ☐  **A.**  in full at closing by _____

26  ☒  **B.**  added to the loan amount and financed.  (If checked, then the term "loan amount" as used herein shall mean the
27  amount set forth in the Purchase and Sale Agreement plus the VA funding fee so financed; the monthly payments
28  will increase accordingly.)

29  **5.  NEW CONSTRUCTION HOME WARRANTY.** If the improvements on the Property are less than one year old at the
30  time of closing, Seller shall, if required by VA/FHA, provide a home warranty certificate acceptable to VA/FHA.

31  **6.  PUBLIC WATER OR PUBLIC SEWER SYSTEMS.** As required by VA/FHA, both the Buyer and Seller agree that
32  if public water or a public sewer system is available at the street, the Property must be connected.  If available and
33  Property is not connected, select one:

34  ☐  **A.** _____ agrees to pay the cost of said connection not to exceed $ _____ .

35  ☐  **B.**  Buyer to pay $ _____ and Seller to pay $ _____ for the cost of connection.

36  **CERTIFICATION.** At the time of Closing ____ Seller ____ shall provide certification, from the proper authority,
37  that the Property is connected to and serviced by the public system.

38  **7.  WOOD DESTROYING INSECT INFESTATION REPORT.** In the case of a VA Loan, the Report is deemed to be a
39  non-allowable expense under VA regulations and shall not be a Buyer expense. Therefore, Seller agrees to pay at or
40  before Closing the cost of such Report on behalf of Buyer. All other obligations concerning the Report, repairs, and
41  treatment shall remain as agreed upon in the Purchase and Sale Agreement.

This form is copyrighted and may only be used in real estate transactions in which ____ **Christopher Bane** ____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (815) 321-1477.

TENNESSEE
REALTORS       Copyright 2013 © Tennessee Realtors®
               RF625 -- VA / FHA Loan Addendum, Page 1 of 2                    Version 01/01/2017

InstanetFORMS

8   NON-ALLOWABLE SETTLEMENT CHARGES OR CLOSING COSTS.  In the event of settlement charges or closing costs at time of closing which are deemed to be non-allowable and not chargeable to the Buyer pursuant to the governmental guidelines, Seller agrees to pay at closing (rendered by delivery of warranty deed and payment of purchase price) such non-allowable settlement charges or closing costs on behalf of Buyer at a sum not to exceed $_____. Such sum shall be a part of the amount if any, which Seller has agreed to pay on behalf of Buyer in the Purchase and Sale Agreement or prior Addenda.

This Addendum is made a part of the Purchase and Sale Agreement as if quoted therein verbatim. Should the terms of this Addendum conflict with the terms of the Purchase and Sale Agreement or other documents executed prior to or simultaneous to the execution of this Addendum, the terms of this Addendum shall control, and the conflicting terms are hereby considered deleted and expressly waived by both Seller and Buyer. In all other respects, the Purchase and Sale Agreement shall remain in full force and effect.

PURCHASE AND SALE AGREEMENT CERTIFICATION.  "We hereby certify that the terms of the (this) Sales Contract are true and, to the best of our knowledge and belief, that there are no side agreements not disclosed within or by an attached addendum between the BUYER, the SELLER, or REAL ESTATE BROKER." The parties agree that the Real Estate Broker's signature(s) on this document is for certification purposes only as required and does not make either said Real Estate Broker a party to the Purchase and Sale Agreement.

The party(ies) below have signed and acknowledge receipt of a copy

*Loxie D. Bane*
BUYER   Loxie D. Bane                          BUYER
11/06/2017          at _____ o'clock □ am □ pm          at _____ o'clock □ am □ pm
Date                                         Date

The party(ies) below have signed and acknowledge receipt of a copy

SELLER  Trustee    at ____ o'clock □ am □ pm    SELLER                 at ____ o'clock □ am □ pm
Date                                         Date

The party(ies) below have signed and acknowledge receipt of a copy

REAL ESTATE BROKER FOR BUYER         FIRM    All Pro REALTORS, Inc.
11-7-17   at 12:45 o'clock  am ☒pm
Date

The party(ies) below have signed and acknowledge receipt of a copy

REAL ESTATE BROKER FOR SELLER        FIRM    Coldwell Banker Wallace & Wallace, Realtors
11     at  11  o'clock ☒am □ pm
Date

Christopher Bane



**WALLACE & WALLACE,
REALTORS®**

# TENNESSEE RESIDENTIAL PROPERTY
# CONDITION EXEMPTION NOTIFICATION

Property Address:    1403    River Run Clr - Sevierville TN 37876                    Sevierville        TN    37876

Seller:

The Tennessee Residential Property Disclosure Act requires sellers of residential real property with one to four dwelling units to furnish to a buyer one of the following: (1) a residential property disclosure statement (the "Disclosure"), or (2) a residential property disclaimer statement (permitted only where the buyer waives the required Disclosure). Some property *transfers may be exempt from this requirement (See Tenn. Code Ann. § 66-5-209). The following is a summary of the buyers' and sellers' rights and obligations under the Act. A complete copy of the Act may be found at:* http://www.tn.gov/regboards/trec/law.shtml. (See Tenn. Code Ann. § 66-5-201, et seq.)

1.  Sellers must disclose all known material defects, and must answer the questions on the Disclosure form in good faith to the best of the seller's knowledge as of the Disclosure date.

2.  Sellers must give the buyers the Disclosure form before the acceptance of a purchase contract.

3.  Sellers must inform the buyers, at or before closing, of any inaccuracies or material changes in the condition that have occurred since the time of the initial Disclosure, or certify that there are no changes.

4.  Sellers may give the buyers a report or opinion prepared by a professional inspector or other expert(s), or certain information provided by a public agency, in lieu of responding to some or all of the questions on the form (See Tenn. Code Ann. § 66-5-204).

5.  Sellers are not required to have a home inspection or other investigation in order to complete the Disclosure form.

6.  Sellers are not required to repair any items listed on the Disclosure form or on any past or future inspection report *unless agreed to in the purchase contract.*

7.  Sellers involved in the first sale of a dwelling must disclose the amount of any impact fees or adequate facility taxes paid.

8.  *Sellers are not required to disclose if any occupant was HIV-positive, or had any other disease not likely to be transmitted by occupying a home, or whether the home had been the site of a homicide, suicide or felony, or act or occurrence which had no effect on the physical structure of the property.*

9.  Sellers may provide an "as is", "no representations or warranties" disclaimer statement in lieu of the Disclosure form only if the buyer waives the right to the required disclosure, otherwise the sellers must provide the completed Disclosure form (See Tenn. Code Ann. § 66-5-202).

10. Sellers may be exempt from having to complete the Disclosure form in certain limited circumstances (e.g. public auctions, court orders, some foreclosures and bankruptcies, new construction with written warranty, or owner has not resided on the property at any time within the prior 3 years). (See Tenn. Code Ann. § 66-5-209).

11. Buyers are advised to include home, wood infestation, well, water sources, septic system, lead-based paint, radon, mold, and other appropriate inspection contingencies in the contract, as the Disclosure form is not a warranty of any kind by the seller, and is not a substitute for any warranties or inspections the buyer may desire to purchase.

12. Any repair of disclosed defects must be negotiated and addressed in the Purchase and Sale Agreement; otherwise, seller is not required to repair any such items.

13. Buyers may, but do not have to, waive their right to receive the Disclosure form from the sellers if the sellers provide a disclaimer statement with no representations or warranties. (See Tenn. Code Ann. § 66-5-202).

14. Remedies for misrepresentations or nondisclosure in a Property Condition Disclosure statement may be available to buyer and are set out fully in Tenn. Code Ann. § 66-5-208. Buyer should consult with an attorney regarding any such matters.

15. Representations in the Disclosure form are those of the sellers only, and not of any real estate licensee, although licensees are required to disclose to all parties adverse facts of which the licensee has actual knowledge or notice.

16. Pursuant to Tenn. Code Ann. § 47-18-104(b), sellers of newly constructed residences on a septic system are prohibited

This form is copyrighted and may only be used in real estate transactions in which        **Mark Lane**            is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

**REALTORS®**    Copyright 2015 © Tennessee Realtors®                                                    Version 01/01/2017
RF203 – Tennessee Residential Property Condition Exemption Notification, Page 1 of 3

45  from knowingly advertising or marketing a home as having more bedrooms than are permitted by the subsurface sewage
46  disposal system permit.

47  17. Sellers must disclose the presence of any known exterior injection well, the presence of any known sinkhole(s), the
48  results of any known percolation test or soil absorption rate performed on the property that is determined or accepted by
49  the Department of Environment and Conservation, and whether the property is located within a Planned Unit
50  Development as defined by Tenn. Code Ann. § 66-5-213 and, if requested, provide buyers with a copy of the
51  development's restrictive covenants, homeowner bylaws and master deed. Sellers must also disclose if they have
52  knowledge that the residence has ever been moved from an existing foundation to another foundation.

53  The Buyers and Sellers involved in the current or prospective real estate transaction for the property listed above
54  acknowledge that they were informed of their rights and obligations regarding Residential Property Disclosures, and that this
55  information was provided by the real estate licensee(s) prior to the completion or reviewing of a Tennessee Residential
56  Property Condition Disclosure, a Tennessee Residential Property Condition Disclaimer Statement, or a Tennessee Residential
57  Property Condition Exemption Notification. Buyers and Sellers also acknowledge that they were advised to seek the advice
58  of an attorney on any legal questions they may have regarding this information or prior to taking any legal actions.

59  The Tennessee Residential Property Disclosure Act states that anyone transferring title to residential real property must
60  provide information about the condition of the property. This completed form constitutes that disclosure by the Seller. The
61  information contained in the disclosure is the representation of the owner and not the representation of the real estate licensee
62  or sales person, if any. *This is not a warranty or a substitute for any professional inspections or warranties that the purchasers*
63  *may wish to obtain.*

64  **Buyers and Sellers should be aware that any sales agreement executed between the parties will supersede this form as**
65  **to the terms of sale, property included in the sale and any obligations on the part of the seller to repair items identified**
66  **below and/or the obligation of the buyer to accept such items "as is."**

67  The undersigned Seller of the property described as _____ 1463 ___ River Run Clr - Sevierville TN 37876 _____
68  does hereby notify Buyer that said property is being offered without a Residential Property Condition Disclosure Statement
69  as provided by the Tennessee Residential Property Disclosure Act. This transfer is excluded under Tenn. Code Ann. § 66-5-
70  209 for the following reason(s):

71  ☒  This is a transfer pursuant to court order including, but not limited to, transfers ordered by a court in the
72      administration of an estate, transfers pursuant to a writ of execution, transfers by foreclosure sale, transfers by a
73      trustee in a bankruptcy, transfers by eminent domain and transfers resulting from a decree of specific performance.

74      This is a transfer to a beneficiary of a deed of trust by a trustor or successor in interest who is in default; transfers by
75      a trustee under a deed of trust pursuant to a foreclosure sale, or transfers by a beneficiary under a deed of trust who
76      has acquired the real property at a sale conducted pursuant to a foreclosure sale under a deed of trust or has acquired
77      the real property by a deed in lieu of foreclosure.

78      This is a transfer by a fiduciary in the course of the administration of a decedent's estate, guardianship,
79      conservatorship or trust.

80      This is a transfer from one (1) or more co-owners solely to one (1) or more co-owners. This provision is intended to
81      apply and only does apply in situations where ownership is by a tenancy by the entirety, a joint tenancy or a tenancy
82      in common and the transfer will be made from one (1) or more of the owners to another owner or co-owners holding
83      property either as a joint tenancy, tenancy in common or tenancy by the entirety.

84      This is a transfer made by virtue of the record owner's failure to pay federal, state or local taxes.

85      This is a transfer between spouses resulting from a decree of divorce or a property settlement stipulation.

86      This is a transfer made solely to any combination of a spouse or a person or persons in the lineal line of
87      consanguinity of one (1) or more of the transferors.

88      This is a transfer to or from any governmental entity of public or quasi-public housing authority or agency.

89      This is a transfer involving the first sale of a dwelling provided that the builder offers a written warranty.

90      *This is a transfer of any property sold at public auction.*

91      This is a transfer of any property where the owner has not resided on the property at any time within three (3) years
92      prior to the date of transfer.

93      This is a transfer from a debtor in a chapter 7 or a chapter 13 bankruptcy to a creditor or third party by a deed in lieu
94      of foreclosure or by a quitclaim deed.

95  Pursuant to Tenn. Code Ann. § 66-5-212, Sellers are required to disclose, in writing, the presence of any known exterior
96  injection well on the Property, whether the Sellers have knowledge that any single family residence on the Property has ever
97  been moved from an existing foundation to another foundation, whether the Sellers have knowledge of any percolation tests

This form is copyrighted and may only be used in real estate transactions in which _____ **Mark Lane** _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

REALTORS    **Copyright 2015 © Tennessee Realtors®**
            **RF203 – Tennessee Residential Property Condition Exemption Notification, Page 2 of 3**       Version 01/01/2017

100  of soil absorption rates performed on the Property that are determined or accepted by the Tennessee Department of
101  Environment and Conservation and the results of said tests and/or rates, and the presence of any known sinkholes. Sellers,
102  pursuant to Tenn. Code Ann. § 66-5-213, are also required to disclose in writing if the Property is located in a Planned Unit
     Development and upon request, provide buyers with a copy of the development's restrictive covenants, homeowner bylaws
     and master deed.

103  **CHECK ALL THAT APPLY:**

104  YES   NO    UNKNOWN

          X                    1.   Seller knows of the presence of an exterior injection well on the Property.

          X                         Seller knows that a single family residence located on Property has been moved from an
                                     existing foundation to another foundation.

108       X                         Seller knows of a percolation test(s) that has been performed on the Property that is
109                                 determined or accepted by the Tennessee Department of Environment and Conservation.
110                                 If yes, results of test(s) are attached.

111       X                    4.   Seller knows of soil absorption rate(s) that has been performed on the property that is
112                                 determined or accepted by the Tennessee Department of Environment and Conservation.
113                                 If yes, results of rate(s) are attached.

114       X                         Seller knows of a sinkhole(s) present on the Property. A sinkhole is defined pursuant to
115                                 Tenn. Code Ann. § 66-5-212(c) as "a subterranean void created by the dissolution of
116                                 limestone or dolostone strata resulting from groundwater erosion, causing a surface
117                                 subsidence of soil, sediment, or rock and is indicated through the contour lines on the
118                                 Property's recorded plat map."

119       X                    6.   This Property is located in a Planned Unit Development. Planned Unit Development is
120                                 defined pursuant to Tenn. Code Ann. § 66-5-213 as "an area of land, controlled by one
121                                 (1) or more landowners, to be developed under unified control or unified plan of
122                                 development for a number of dwelling units, commercial, educational, recreational or
123                                 industrial uses, or any combination of the foregoing, the plan for which does not
124                                 correspond in lot size, bulk or type of use, density, lot coverage, open space, or other
125                                 restrictions to the existing land use regulations." Upon request, Seller shall provide to
126                                 buyers copies of the development's restrictive covenants, homeowner bylaws and master
127                                 deed. Unknown is not an appropriate response under the statute.

The party(ies) below have signed and acknowledge receipt of a copy.

SELLER  Michael Fitzpatrick, Trustee

_8/2/17_                    ___ o'clock □ am □ pm          at            □ o'clock □ am   pm
                                                          Date

133  Buyer is advised that no representation or warranties, express or implied, as to the condition of the property and its
134  improvements, are being offered by Seller except in the case where transfer involves the first sale of a dwelling in which
135  builder offers a written warranty and those required by Seller pursuant to Tenn. Code Ann. §§ 66-5-212 and 66-5-213.
136  Furthermore, the Buyer should make or have made on the Buyer's behalf a thorough and diligent inspection of the property.

137  The party(ies) below have signed and acknowledge receipt of a copy.

     _David D Bane_

11-6-17          8     o'clock □ am  (pm)               □ o'clock □ am □ pm

142  If the property being purchased is a condominium, the transferee/buyer is hereby given notice that the transferee/buyer is
143  entitled, upon request, to receive certain information regarding the administration of the condominium from the developer or
144  the condominium association, as applicable, pursuant to Tennessee Code Annotated § 66-27-502.

NOTE: This form is provided by TAR to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form,
you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that
any such alteration, amendment or edit of said form is done at your own risk. Use of the TAR logo in conjunction with any form other than standardized
forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent
available form.

This form is copyrighted and may only be used in real estate transactions in which _____ Mark Lane _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

Copyright 2015 © Tennessee Realtors'                                    Version 01/01/2017
RF203 – Tennessee Residential Property Condition Exemption Notification, Page 3 of 3

WALLACE & WALLACE,
REALTORS®

# CONFIRMATION OF AGENCY STATUS

1  Every real estate licensee is required to disclose his or her agency status in a real estate transaction to any buyer or
2  seller who is not represented by an agent and with whom the Licensee is working directly in the transaction. The
3  purpose of this Confirmation of Agency Status is to acknowledge that this disclosure occurred. Copies of this
4  confirmation must be provided to any signatory thereof. As used below, "Seller" includes sellers and landlords;
5  "Buyer" includes buyers and tenants. Notice is hereby given that the agency status of this Licensee (or Licensee's
6  company) is as follows in this transaction:
7  The real estate transaction involving the property located at:
8  1403 ____ R&O Bono Cir _____ Sevierville ____ TN _ 37876
9  PROPERTY ADDRESS

| | |
|---|---|
| 10  SELLER NAME: Michael Fitzpatrick - Trustee | BUYER NAME: LORIE D. BANE |
| 11  LICENSEE NAME: Mark Lane | LICENSEE NAME: CHRIS BANE |
| 12  in this consumer's current or prospective transaction is | in this consumer's current or prospective transaction |
| 13  serving as: | is serving as: |
| 14  Transaction Broker or Facilitator. | Transaction Broker or Facilitator. |
| 15  (not an agent for either party). | (not an agent for either party). |
| 16  Seller is Unrepresented. | Buyer is Unrepresented. |
| 17  Agent for the Seller. | Agent for the Buyer. |
| 18  ☒ Designated Agent for the Seller. | ☒ Designated Agent for the Buyer. |
| 19  Disclosed Dual Agent (for both parties), | Disclosed Dual Agent (for both parties), |
| 20  with the consent of both the Buyer and the Seller | with the consent of both the Buyer and the Seller |
| 21  in this transaction. | in this transaction. |

22  This form was delivered in writing, as prescribed by law, to any unrepresented buyer prior to the preparation of any offer
23  to purchase, OR to any unrepresented seller prior to presentation of an offer to purchase; OR (if the Licensee is listing a
24  property without an agency agreement) prior to execution of that listing agreement. This document also serves as
25  confirmation that the Licensee's Agency or Transaction Broker status was communicated orally before any real estate
26  services were provided and also serves as a statement acknowledging that the buyer or seller, as applicable, was informed that
27  any complaints alleging a violation or violations of Tenn. Code Ann. § 62-13-312 must be filed within the applicable statute
28  of limitations for such violation set out in Tenn. Code Ann. § 62-13-313(e) with the Tennessee Real Estate Commission, 710
29  James Robertson Parkway, 3rd Floor, Nashville, TN 37232, PH: (615) 741-2273. This notice by itself, however, does not
30  constitute an agency agreement or establish any agency relationship.

31  By signing below, parties acknowledge receipt of Confirmation of Agency relationship disclosure by Realtor® acting as
32  Agent/Broker OR other status of Seller/Landlord and/or Buyer/Tenant pursuant to the National Association of Realtors®
33  Code of Ethics and Standards of Practice.

34  _____ 10/6/17     Lorie D Bane     11-6-17
35  Seller Signature Michael Fitzpatrick - Trustee   Date     Buyer Signature     Date

36
37  Seller Signature _____ Date     Buyer Signature _____ Date

38                                    10-11-17                  11-6-17
39  Listing Licensee Mark Lane     Date     Chris Bane / Selling Licensee     Date

40  Coldwell Banker Wallace & Wallace     ALL PRO REALTORS INC.
41  Listing Company                       Selling Company

NOTE: This form is provided by TAR to its members for their use in real estate transactions and it is to be used as is. By downloading and/or using this form,
you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that
any such alteration, amendment or edit of said form is done at your own risk. Use of the TAR logo in conjunction with any form other than standardized
forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent
available form.

This form is copyrighted and may only be used in real estate transactions in which ____ Mark Lane ____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

REALTORS®     Copyright 2013 © Tennessee Realtors®     Version 01/01/2017
RF302 – Confirmation of Agency Status, Page 1 of 1

WALLACE & WALLACE,
REALTORS®

# SUBSURFACE SEWAGE DISPOSAL SYSTEM PERMIT
# DISCLOSURE

1   Regarding:   1463   River Run Cir                          Sevierville        TN    37876
PROPERTY ADDRESS

The owner of this residential property discloses the following:

3   ☑   According to the subsurface sewage disposal system permit issued for this property, this property is permitted for   3
4       (number of) bedrooms.  A copy of the permit was obtained from the appropriate governmental permitting authority and
5       is attached to this disclosure.

I/We have requested a copy of the subsurface sewage disposal system permit issued for this property from the
appropriate governmental permitting authority.  However, I/we were informed that

□   The file could not be located.
OR
10      □   A permit was not issued for this property.
11  As a result, I/we do not have any knowledge as to the number of bedrooms for which this property has been permitted.

12  NOTE:  There may be additional information which may be of interest and/or concern to Buyers contained in the official file
13      with the Tennessee Department of Environment and Conservation, Groundwater Protection division located in the
14      county office regulating septic systems.  This file may contain information concerning maintenance that has been
15      done on the system as well as any violations imposed by the state.  Buyers are encouraged to obtain this information
16      and if of concern to them, to have a soil engineer interpret the contents of the file.  Real estate licensees are not soil
17      engineers and are not experts who can provide an interpretation of the contents of the official file.

18  The following parties have reviewed the information above and certify, to the best of their knowledge, that the information
    they have provided is true and accurate and acknowledge receipt of a copy.

    have this form signed and acknowledge receipt of a copy.

21  _Lorie D Bane_____                        BUYER
22
23  11-6-17       8   o'clock □ am ⊙ pm
24

NOTE: This form is provided to LBR to its clients for their use in real estate transactions and is not intended as a legal advice. By signing this and/or using this form,
you agree and understand that it is used with and in accordance with its contents except as otherwise provided in the state, locals, and upper and acknowledge that
any unauthorized, distribution or use of said form is done at your own risk. Use of the LBR agent in connection with any form other than consumated
forms created by LBR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent version of same.

This form is copyrighted and may only be used in real estate transactions in which _____ Mark Lane _____ is involved as a TAR authorized user.
Use of this form by any other person is in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

REALTORS®       Copyright 2008 © Tennessee Realtors®                              Version 01/01/2017
                RF208 – Subsurface Sewage Disposal System Permit Disclosure, Page 1 of 1

Division of Environmental Health
865-429-1766 – Phone  /  865-429-1965 - Fax

## APPLICATION FOR INFORMATION REGARDING
Subsurface Sewage Disposal (SSD) System Permit and Certificate of Completion

Complete the following information:

1. Current Owner's Name: _MORRIS, MARK S. + THELMA J_
2. Address of Property: _1463 RIVER RUN CIR_
   _SEVIERVILLE, TN  37876_
   Road Name of Home Location: _RIVER RUN CIR._
3. Subdivision Name: _RIVER RUN ESTATES_
   Lot # _31_  Block _—_  Phase: _—_  Section: _—_
   Property Vacant   Yes ___  No _X_
4. Date Home Constructed: _2005   ??_  Number of Bedrooms: _3_
5. Original Owner:
6. Previous Owners: _KEAR, EDDIE_

Do you want the results of this file search:   Faxed _X_   Office Pick-up ___   Mailed ___
If mailed a stamped self-addressed envelope must be included in the application

Date: _10-19-17_  Signature _[signature]_
Phone Number: _865-356-2123_  Fax Number: _865-694-1774_

---

For SCEH use only:

### RESULT OF FILE SEARCH                Date Received: _10/19/17_

___ SSD System Permit Issued:  Date: _____ for a _____ Bedroom system.
_X_ SSD System Certificate of Completion Approval:  No ___  Yes _X_  for a _three_ Bedroom system.
___ File search was unable to locate any record of this property based upon the information provided.

Since no site visit has been made in regard to this request no comment or warranty about the
current condition or future performance of the SSD system is given. This is not an INSPECTION
LETTER and is not to be used for loan closings. Nor can the Division make any representation about
whether unauthorized modifications have been made to either the SSD system or the original structure.
This document only reflects what the Division's records show about the number of bedrooms authorized
in the subsurface sewage disposal system permit based on the information provided in this application.

Environmental Specialist/ Office Personal _Denny_   Date _10/19/17_

SEVIER COUNTY HEALTH DEPARTMENT • DIVISION OF ENVIRONMENTAL HEALTH
## CERTIFICATE OF COMPLETION OF SUBSURFACE SEWAGE DISPOSAL SYSTEM

Issued to: _Adkins, Mark_
Owner, Developer, Contractor, Installer, Etc.

Location: _River Run #1_

_1443 River Run Circle_

Type of System:
( ) 1. Conventional
( ) 2. Low Pressure Pipe
( ) 3. Mound
( ) 4. Chamber System  ( ) 2'  ( ) 3'
(X) 5. Large Diameter Gravelless Pipe  ( ) 8"  (X) 10"
    (a) Gravel backfill required  Yes ( )  No ( )

( ) 6. Other _____

_Atchley_     _1000_     Septic Tank
(type)       (volume)

Estimated Absorption Rate _60_    # Bedrooms _Three_
     (minutes per inch)

(X) New Installation    ( ) Repair    ( ) Other

Installed by: _John More_

HEALTH DEPARTMENT

Construction Approved By: _Anthony S. Robinson_, _Env. Spec._      _6-10-05_
                      (Name and Title)                                  (Date)

Creative Printing Co. 12357

Original - File
Copy - Owner



WALLACE & WALLACE
REALTORS®

# DISCLAIMER NOTICE

The Brokers and their affiliated licensees (hereinafter collectively "Licensees") involved in the Purchase and
2   Sale Agreement (hereinafter "Agreement") regarding real estate located at
3   __1463   River Run Cir__                                    __Sevierville__   __TN__  __37876__  (hereinafter "Property")
4   are not attorneys and are not structural or environmental engineers. They are engaged in bringing together buyers
5   and sellers in real estate transactions. Licensees expressly deny any expertise with respect to advice or informed
6   opinions regarding any of the following matters. This Disclaimer Notice is an express warning to all sellers and
7   buyers that they should not rely on any statement, comment or opinion expressed by any Licensee when making
8   decisions about any of the following matters, including the selection of any professional to provide services on
9   behalf of buyers or sellers. Any professional selected by buyers or sellers should be an "independent, qualified
10  professional", who complies with all applicable state/local requirements, which may include licensing, insurance,
11  and bonding requirements. It is strongly recommended that buyers include contingency clauses in their offers to
12  purchase with respect to these or any other matters of concern and that buyers, in writing the offer, allow enough
13  time to get an evaluation of the following matters from an independent, qualified professional. The matters listed
14  below are not an exclusive list of actions or circumstances which are not the responsibility of the Licensees with
15  whom you work. These items are examples and are provided only for your guidance and information.

16  **1.  THE STRUCTURAL OR OTHER CONDITIONS OF THE PROPERTY.** Consult with professional
17  engineers or other independent, qualified professionals to ascertain the existence of structural issues, the
18  condition of synthetic stucco (E.I.F.S.) and/or the overall condition of the Property.

19  **2.  THE CONDITION OF ROOFING.** Consult with a bonded roofing company for any concerns about the
20  condition of the roof.

21  **3.  HOME INSPECTION.** We strongly recommend that you have a home inspection, which is a useful tool for
22  determining the overall condition of a home including, but not limited to, electrical, heating, air conditioning,
23  plumbing, water-heating systems, fireplaces, windows, doors and appliances. Contact several sources (like
24  the Tennessee Department of Commerce & Insurance (http://tn.gov/commerce/), the American Society of
25  Home Inspectors (www.ashi.com), the National Association of Certified Home Inspectors (www.nahi.org),
26  and Home Inspectors of Tennessee Association (www.hita.us) and independently investigate the competency
27  of an inspector, including whether he has complied with State and/or local licensing and registration
28  requirements in your area. The home inspector may, in turn, recommend further examination by a specialist
29  (heating-air-plumbing, etc.). **Failure to inspect typically means that you are accepting the Property "as
30  is".**

31  **4.  WOOD DESTROYING ORGANISMS, PESTS AND INFESTATIONS.** It is strongly recommended that
32  you use the services of a licensed, professional pest control company to determine the presence of wood
33  destroying organisms (termites, fungus, etc.) or other pests or infestations and to examine the Property for any
34  potential damage from such.

35  **5.  ENVIROMENTAL HAZARDS.** Environmental hazards, such as, but not limited to: radon gas, mold,
36  asbestos, lead-based paint, hazardous wastes, landfills, byproducts of methamphetamine production, high-
37  voltage electricity, noise levels, etc., require advanced techniques by environmental specialists to evaluate,
38  remediate and/or repair. It is strongly recommended that you secure the services of knowledgeable
39  professionals and inspectors in all areas of environmental concern.

This form is copyrighted and may only be used in real estate transactions in which __Mark Lane__ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

REALTORS    Copyright 2003 © Tennessee Realtors®
RF304 – Disclaimer Notice, Page 1 of 3                                          Version 01/01/2017

40   **6. SQUARE FOOTAGE.** There are many ways of measuring square footage. Information is sometimes
41   gathered from tax or real estate records on the Property. Square footage provided by builders, real estate
42   licensees, or tax records is only an estimate with which to make comparisons, but **it is not guaranteed. It is**
43   advised that you have a licensed appraiser determine actual square footage.

44   **7. CURRENT VALUE, INVESTMENT POTENTIAL, OR RESALE VALUE OF THE PROPERTY.** A
45   true estimate of the value can only be obtained through the services of a licensed appraiser. No one, not even
46   a professional appraiser, can know the future value of a property. Unexpected and unforeseeable things
47   happen. **NOTE:** A real estate licensee's Comparative Market Analysis (CMA) or Broker's Price Opinion
48   (BPO), etc., while sometimes used to set an asking price or an offer price, **is not an appraisal.**

49   **8. BOUNDARY LINES, EASEMENTS, ENCROACHMENTS, AND ACREAGE.** It is strongly advised
50   that you secure the services of a licensed surveyor for a full-stake boundary survey with all boundary lines,
51   easements, encroachments, flood zones, total acreage, etc., clearly identified. It is also advised that you **not**
52   rely on mortgage loan inspection surveys, previous surveys, plat data, or Multiple Listing Service (MLS) **data**
53   for this information, even if acceptable to your lender.

54   **9. ZONING, CODES, COVENANTS, RESTRICTIONS, AND RELATED ISSUES.** Zoning, codes,
55   covenants, restrictions, home owner association by-laws, special assessments, city ordinances, governmental
56   repair requirements and related issues need to be verified by the appropriate sources in writing. If your
57   projected use requires a zoning or other change, it is recommended that you either wait until the change is **in**
58   effect before committing to a property or provide for this contingency in your Purchase and Sale Agreement.

59   **10. UTILITY CONNECTIONS, SEPTIC SYSTEM CAPABILITY, AND RELATED SERVICES.** The
60   availability, adequacy, connection and/or condition of waste disposal (sewer, septic system, etc.), water
61   supply, electric, gas, cable, internet, telephone, or other utilities and related services to the Property need to be
62   verified by the appropriate sources in writing. You should have a professional check access and/or
63   connection to public sewer and/or public water source and/or the condition of any septic system(s) and/or
64   wells. To confirm that any septic systems are properly permitted for the actual number of bedrooms, it is
65   recommended that sellers and/or buyers request a copy of the information contained in the file for the
66   Property maintained by the appropriate governmental permitting authority. If the file for this Property cannot
67   be located or you do not understand the information contained in the file, you should seek professional advice
68   regarding this matter. For unimproved land, septic system capability can only be determined by using the
69   services of a professional soil scientist and verifying with the appropriate governmental authorities that a
70   septic system of the desired type, size, location, and cost can be permitted and installed to accommodate the
71   size home that you wish to build.

72   **11. FLOODING, DRAINAGE, FLOOD INSURANCE, AND RELATED ITEMS.** It is recommended that
73   you have a civil or geotechnical engineer or other independent expert determine the risks of flooding,
74   drainage or run-off problems, erosion, land shifting, unstable colluvial soil, sinkholes and landfills. The risk
75   of flooding may increase and drainage or storm run-off pathways may change. Be sure to consult with the
76   proper governmental authorities, elevation surveyors, and flood insurance professionals regarding flood and
77   elevation certificates, flood zones, and flood insurance requirements, recommendations and costs.

78   **12. CONDEMNATION.** It is recommended that you investigate whether there are any pending or proposed
79   condemnation proceedings or similar matters concerning any portion of the Property with the State, County
80   and city/town governments in which the Property is located. Condemnation proceedings could result in all or
81   a portion of the Property being taken by the government with compensation being paid to the landowner.

82   **13. SCHOOL DISTRICTS AND OTHER SCHOOL INFORMATION.** It is advised that you independently
83   confirm school zoning with the appropriate school authorities, as school districts are subject to change. Other
84   school information (rankings, curriculums, student-teacher ratios, etc.) should be confirmed by appropriate
85   sources in writing.

This form is copyrighted and may only be used in real estate transactions in which _____ **Mark Lane** _____ is involved as a TAR authorized user.
Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

**REALTORS**   **Copyright 2003 © Tennessee Realtors®**
**RF304 – Disclaimer Notice, Page 2 of 3**                                  **Version 01/01/2017**

14. **INFORMATION ABOUT CRIMES, METHAMPHETAMINE PROPERTIES, OR SEX OFFENDERS.** You should consult with local, state and federal law enforcement agencies for information or statistics regarding criminal activity at or near the Property, the presence of methamphetamine manufacturing, or for the location of sex offenders in a given area.

15. **LEGAL AND TAX ADVICE.** You should seek the advice of an attorney and/or certified tax specialist on any legal or tax questions concerning any offers, contracts, issues relating to title or ownership of the Property, or any other matters of concern, including those itemized in this Disclaimer Notice. Real estate licensees are not legal or tax experts, and therefore cannot advise you in these areas.

16. **RECOMMENDED INSPECTORS, SERVICE PROVIDERS, OR VENDORS.** The furnishing of any inspector, service provider or vendor named by the real estate licensee is done only as a convenience and a courtesy, and does not in any way constitute any warranty, representation, or endorsement. Buyers and sellers have the option to select any inspectors, service providers or vendors of the buyer's or seller's choice. You are advised to contact several sources and independently investigate the competency of any inspector, contractor, or other professional expert, service provider or vendor and to determine compliance with any licensing, registration, insurance and bonding requirements in your area.

The buyers and sellers acknowledge that they have not relied upon the advice, casual comments, or verbal representations of any real estate licensee relative to any of the matters itemized above or similar matters. The buyers and sellers understand that it has been strongly recommended that they secure the services of appropriately credentialed experts and professionals of the buyer's or seller's choice for the advice and counsel about these and similar concerns.

___

*Lowe D Bane*

CLIENT/CUSTOMER (☒ BUYER / ☐ SELLER)          CLIENT/CUSTOMER (☐ BUYER / ☐ SELLER)

11/6/17        8       'lock   am  (pm)

NOTE: This form is provided by TAR to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the TAR logo in conjunction with any form other than standardized forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.

This form is copyrighted and may only be used in real estate transactions in which _____ Mark Lane _____ is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors. ® (615) 321-1477.

Copyright 2003 © Tennessee Realtors
RF304 – Disclaimer Notice, Page 3 of 3          Version 01/01/2017